## MALMSKOLD v. LIBBY, McNEIL & LIBBY.

### No. 71.

District Court, W. D. Washington, N. D.

Feb. 26, 1940.

Sam L. Levinson and Jay Friedman, both of Seattle, Wash., for plaintiff.

Bogle, Bogle & Gates, Stanley B. Long, and W. T. Beeks, all of Seattle, Wash., for defendant.

BOWEN, District Judge.

The question is whether to grant a new trial on all issues, or only on the issue of damages as requested by plaintiff, or to set aside the jury's verdict and dismiss the action as requested by defendant.

The action is one to recover for personal injuries and damages sustained by plaintiff when he fell into a bunker coal trimming hatch on defendant's steamship Otsego while plaintiff and other longshoremen in the employ of Pacific Coast Coal Company, an independent contracting stevedore, were loading coal into the ship's fuel coal bunkers at the Pacific Coast Coal Company's loading bunkers in the Port of Seattle about 2 A. M. on May 4, 1939. The case was tried before the court by a jury which returned a verdict for plaintiff for $3500. The principal issues involved the negligence of defendant, the contributory negligence of plaintiff, and the amount of plaintiff's damages.

By plaintiff's calculation and contention construing the evidence, plaintiff has incurred and will incur at least $3500 for medical expenses and loss of one year's earnings, and thus the jury made no allowance to compensate plaintiff for pain, suffering and physical impairment, resulting from a fracture of the eighth, ninth and tenth ribs, a fracture of the tuberosity of the humerus and of the right shoulder, and a badly comminuted fracture of the lower end of the right femur which extended into and through the knee joint, and a permanent disability of 75% in the right knee. By defendant's construction of the evidence, $590 of the jury's verdict can be allocated to compensation for such pain, suffering and physical impairment. Plaintiff has a life expectancy of 20.20 years, as to which there is no dispute. It obviously appears that the verdict is inadequate.

In the case of Bass v. Dehner, 21 F.Supp. 567, at page 568, Circuit Judge Bratton speaking for the District Court said:

"Apart from the statutes of the state or of the practice in its courts, the [this] court is clothed with power to set aside the verdict in part and to limit the new trial to the issue of damages, if that issue is so separable and distinct from that of negligence as the proximate cause of the accident that the single issue can be tried without prejudice or injustice. [Citing]. But the practice is not to be commended, and should be adopted with caution only where it is clear that no prejudice will result to either party. It is appropriately followed only in furtherance of justice where the issues are not substantially connected or interwoven. [Citing].

"The issue of liability was strenuously contested throughout the trial, and there was sharp conflict in the evidence respecting it. It required approximately a day to submit the evidence touching that question. If the question had been submitted to the court, it would have been resolved in favor of plaintiff; but it must be conceded that reasonable minds could well have taken either view of it. There was no contest concerning the injury and death of Doctor Bass. That was admitted. And there was no dispute in the evidence concerning his life expectancy and earning capacity. The undisputed evidence disclosed that he was 57 years of age; that he had a life expectancy of thirteen years; that for several years preceding the accident he had never earned less than $1,800 from the practice of his profession; and that it averaged much more than that sum. The evidence relating to that issue was submitted in less than half an hour. The real subject of the trial to which the parties addressed themselves with vigor and zeal was the question of negligence as the proximate cause of the accident. The cause was submitted to the jury in the afternoon on Saturday. The jury deliberated about two hours and returned their verdict in the late afternoon. The week-end was at hand. Considered together, these facts and circumstances create a strong suspicion that the finding for plaintiff on the issue of negligence and the insignificant amount awarded as damages, represented a compromise verdict on both issues. The conclusion is inescapable that some of the jurors surrendered their convictions upon the issue of negligence while others surrendered theirs upon the issue of reasonably adequate damages in order to reach a verdict, and that the verdict did not represent the conscientious conviction of the entire jury upon either issue. It is well settled that such a verdict cannot be divided into good and bad. It cannot be sanctioned in respect to the issue of negligence and set aside as to that of damages with a new trial limited to the latter question. To do so would be a serious injustice to the defendant. [Citing].

"The motion is granted. The verdict is set aside in toto, and a new trial granted upon the case at large."

In Southern Pac. Co. v. Gastelum, 36 Ariz. 106, 283 P. 719, at page 725, it was held: "The court should never permit a party to an action to select for retrial the issues decided against him and upon the rehearing treat those decided in his favor as settled, when the issues are interwoven and cannot be separated without injustice to the other party."

In Murray v. Krenz, 94 Conn. 503, 109 A. 859, at page 861, the court said:

"The practical difficulty of a rehearing before a new jury, for example, of the issue of damages while retaining the decision of the first jury upon the issue of liability is apparent. Usually these issues will be inextricably interwoven. * * *

"In Nathan v. Railway Co., 118 N.C. 1066, 24 S.E. 511, the court expresses our thought:

" 'The motion of counsel must be for a new trial, and, while he may suggest or ask that it be partial, he cannot demand it as a right, and by his motion attempt to restrict the action of the court to one or more issues, without forfeiting his right to have the refusal of the motion reviewed.' "

In the case at bar, the verdict for $3500 is for a substantial sum, but considering the nature and severity of plaintiff's injuries, his pain and suffering and loss of earnings, the probability of permanent injury to his knee and the probable resulting depreciation of his earning capacity, the insignificant amount if any above expenses awarded for plaintiff's injuries, his age of 51 years and his life expectancy of 20.20 years, it cannot be successfully contended that the jury's verdict contains any substantial award for pain, suffering and physical and earnings impairment compatible with the extent of his injuries. Here the principle is the same as if the verdict had been for an insignificant amount for all items, as in the cases of

Simmons v. Fish, 210 Mass. 563, 97 N.E. 102, Ann.Cas.1912D, 588; Schuerholz v. Roach, 4 Cir., 58 F.2d 32; and Bass v. Dehner, D.C., 21 F.Supp. 567.

The similarity between the amounts of plaintiff's expenses and of the verdict would alone be enough to compel the conclusion that the verdict in this case was a compromise verdict to the prejudice and loss of both parties, and that circumstance alone would in the light of the above cited cases justify a new trial on all the issues, but that is not the only consideration bearing upon the question.

This case does not involve the relationship of master and servant. There was no such relationship between the parties here. Plaintiff does not here join his employer Pacific Coast Coal Company, an independent contractor, for the obvious reason that plaintiff's rights against that employer are governed by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., which definitely fixes a statutory limited basis of compensation to which plaintiff is entitled irrespective of defendant's negligence. This appears to be a test case involving the asserted liability of a shipowner for negligent injury to plaintiff through alleged failure to supply sufficient lights and protection around a coal trimming hatch (into which he fell) which at least some of the time may have necessarily been kept open and uncovered while the ship was being supplied with fuel coal for its own use by plaintiff and his fellow workers who were employees of an independent contractor under contract to load such fuel possibly through that hatch as well as the other loading hatches. The evidence on that asserted liability taken in its light most favorable to plaintiff is at best extremely doubtful, if not wholly insufficient to justify any verdict. At all stages of the trial defendant's duty to furnish a properly lighted and protected place for plaintiff to work and defendant's primary negligence in this case were the subjects of constant and zealous labor and contention between the parties.

Also, establishing defendant's liability, in view of a trial theory adopted with the approval of counsel, necessitates plaintiff's freedom from contributory negligence, and, without one change in plaintiff's story soon to be stated which was made between the times of his giving and subscribing his discovery deposition taken shortly after the accident, clearly there would be no liability of defendant, because according to his story as first related plaintiff would as a matter of law be guilty of contributory negligence. When he gave his deposition he testified that when he went to work he saw the open trimmming hatch into which he later fell but that at the time of the accident he momentarily forgot it was there. At the time of subscribing his deposition a few days after it was given and at the trial he stated that he had not before the accident seen the hatch into which he fell. This change in his story might have been due to coaching, to his falsification or to his honest correction of an inadvertent mistake. Whatever the explanation, that change in story and the question of contributory negligence were the basis for strenuous and heated contention on behalf of the parties.

The case required four days in trial and much more time was spent on the question of liability including defendant's alleged primary negligence and the alleged contributory negligence of plaintiff than was spent on the issue as to the amount of damages. The primary and principal burden belaboring both parties throughout the trial was the issue of liability.

At a retrial, the change in plaintiff's story and the question of his contributory negligence should again be before the jury. Likewise, a retrial jury should have the benefit of the evidence respecting the relationships and distances between the various trimming hatches and the place where plaintiff was and had been working at and before the time of the accident, the use if any made of the hatch into which plaintiff fell, as well as the evidence bearing upon defendant's duty or the absence of such duty to furnish plaintiff a safe working place, as to which there was at the former trial great conflict, and all the other evidence touching defendant's liability to plaintiff and the amount of damages sustained by plaintiff.

After a thorough re-examination of the evidence and record now before the court, I am convinced that some of the jurors thought defendant liable and some did not, that the pretended verdict was agreed to by all the jurors only after those who thought defendant liable agreed to a reduction of the amount of the award to its present inadequate amount in return for the consent to the finding of liability by those who did not actually believe defendant liable. This was greatly prejudicial to

both parties. In view of the impelling conclusion that the obviously inadequate verdict is illegal because of compromise by the jurors as to liability for and amount of recovery, and the strong probability that adequate compensation for plaintiff's severe injuries would have been awarded if all the jurors had actually found defendant liable, but was not because all of them did not actually so find, and believing as I do under all the circumstances that the issues of liability and amount of damages are connected and interwoven in the former trial, certainly so in the minds of the jury, and that in order to secure justice to both parties not only the question of the amount of damages but also that of liability and all the other issues in this case should be retried before the court with another jury, the verdict will be set aside in all respects, the motion for new trial will be granted, and a retrial will be had upon all the issues.

In view of the foregoing, defendant's motion for dismissal with prejudice will be denied. An order may be settled upon notice or stipulation.