[Civ. No. 17561.  First Dist., Div. One.  Feb. 20, 1958.]

ICE-KIST PACKING COMPANY (a Partnership), Respondent, v. J. F. SLOAN COMPANY (a Corporation), Appellant.

Hoge, Fenton & Jones for Appellant.

Noland, Hamerly & Etienne for Respondent.

BRAY, J.—Plaintiff obtained a jury verdict of $649.35 damages. Upon its motion the court granted a new trial on damages alone. Defendant appeals.

## QUESTIONS PRESENTED

1. Is the order granting new trial on the issue of damages alone void?

2. Did the trial court abuse its discretion in granting a limited new trial? Corollary to this is defendant's contention that there was no evidence of its being negligent and that there was clear proof of its alleged defenses—contributory negligence and assumption of risk.

1. *Order.*

The notice of intention to move for new trial sought a new trial upon the issue of damages alone, and, in the alternative, on all issues upon the ground of "insufficiency of the evidence to justify the verdict and that said verdict is against law in that said verdict . . . awarded damages which were grossly inadequate and in complete variance with the evidence presented and completely contrary to all the evidence." By its own language the notice restricted the ground upon which the new trial was sought to insufficiency of evidence, as it appears that the only respect in which it was claimed that the verdict was against law was because of insufficiency of evidence. Moreover, it has been held that the ground "against law" does not include insufficiency of the evidence. See *Bakurjian v. Pugh*, 4 Cal.App.2d 450, 453-454 [41 P.2d 175]. ■ That case also holds that the only ground upon which a new trial for inadequacy of damages may be granted is insufficiency of the

evidence. (*Id.*, p. 454; see also *Peri* v. *Culley*, 119 Cal. App. 117, 119 [6 P.2d 86]; *Harper* v. *Superior Air Parts, Inc.*, 124 Cal.App.2d 91 [268 P.2d 115]; *Legg* v. *Mutual Benefit H. & A. of Omaha*, 136 Cal.App.2d 887 [289 P.2d 550, 290 P.2d 87].)

The minute order granting the new trial merely states "the Court grants the motion." Section 657, Code of Civil Procedure, provides that when a new trial is granted on the ground of insufficiency of evidence "the order shall so specify this in writing and shall be filed with the clerk within 10 days after the motion is granted; otherwise, on appeal from such order it will be conclusively presumed that the order was not based upon that ground."

No such order was filed. However, in view of the broad interpretation heretofore given this section by the courts, the purpose of the requirement that the ground be stated, the fact that here only one ground was specified in the motion and that that one ground was the only ground upon which the motion could have been granted, we deem that there was a sufficient compliance with the section. *Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110 [142 P.2d 929], held that although the section seems to require the filing of a written order filed with the clerk the requirement of the section is met and no written order required if the minute order specifies the ground. The case stated that the section was to stop the practice theretofore existing by appellate courts of assuming that insufficiency of the evidence was the ground of the order granting the new trial where the order did not so state, and to require that it definitely appear that the new trial was granted on that ground, if it was. In *Cox* v. *Tyrone Power Enterprises*, 49 Cal.App.2d 383 [121 P.2d 829], the minute order gave the ground as "inadequate damages." Here again it was contended that there had to be a formal order and that "inadequate damages" was not "insufficiency of the evidence." In holding that there was a sufficient compliance with section 657, the court gave the history of the amendments to the section, and stated that the purpose of the section as amended was not only that given in the Dempsey case, but by enacting a time limit, to stop the practice of trial courts after the matter was on appeal of filing *nunc pro tunc* orders giving insufficiency of the evidence as a ground of the granting of the new trial. In the concurring opinion Mr. Justice Shinn stated (p. 400): "I am unable to see that the provision of section 657, Code of Civil Procedure, which requires that an

order granting a new trial upon the ground of insufficiency of the evidence shall so state, has any application to an order granting such a motion which has been noticed and presented upon that ground alone. . . . The uncertainty that had theretofore existed arose from the failure to state in orders granting new trials whether insufficiency of the evidence was one of the grounds or the sole ground for the order. Of course there was never any uncertainty in situations in which insufficiency of the evidence was specified in the notice of intention as the sole ground of the motion, which is the one before us. The order and the notice of intention must be read together." That a technical construction of the section is not to be given is shown by the many cases in which a strict compliance with the section was not required. Many of these are set forth in *Piru Citrus Assn.* v. *Williams,* 95 Cal.App.2d 911, 915 [214 P.2d 426]. These included orders granting new trial "on the ground of excessive damages," "upon all the grounds stated in the notice of intention," an order providing that a new trial be granted "as to all issues made by the cross-complaint and the answer thereto," an order stating that if the defendant consented to an increase of the verdict and judgment from $150 to $1,200, the motion for new trial would be denied, otherwise granted; an order granting new trial "on all issues"; on the ground that the verdict was against the admissions of a party; upon the ground that the court had erred in denying motions for judgment of nonsuit; upon "the ground alone of plaintiff's contributory negligence."

As stated in the Cox case, *supra* (49 Cal.App.2d at pp. 401-402) the fact that in amending section 657 "it was not essential that corrective legislation be provided for those cases where no uncertainty existed does not necessarily limit the scope of the amendments but it does aid materially in ascertaining what the purpose and intention of the legislature were in amending the section. Where one construction of a statute will attribute to the legislature reasonable and purposeful motives and another will lead to absurd and unjust consequences which the legislature could not have reasonably or fairly intended to bring about, it is our duty to adopt the first construction if we can do so without exercising the forbidden legislative function. If we should hold that the amendments were intended to apply to the facts before us, where the sole ground of the motion was insufficiency of the evidence (laying aside for the moment the holding of the main opinion

that the record shows full compliance), we would have to say that notwithstanding the indisputable fact that the motion was granted upon the sole ground of insufficiency of the evidence, it will be conclusively presumed that it was not. We would then have to reverse the order, not because of any uncertainty or deficiency of the record to speak the truth, but because we would have decided that the legislature, through ignorance or indifference, had imposed upon the courts a wholly superfluous formality of procedure which not only bordered upon the absurd, but served no purpose, accomplished no improvement over established practices, either by the correction of existing evils or otherwise, substituted fiction for fact in the courts' records, multiplied instead of reducing the opportunities for clerical errors, and without reason or necessity unjustly deprived a litigant of a substantial right.''

Since the amendment in 1939 to section 657 there have been a number of cases holding that the failure to specify that the order is made upon the ground of insufficiency of evidence, precludes the appellate court from considering that ground upon appeal from the order granting new trial. However, as above pointed out, there are exceptions to that holding. Moreover, we have failed to find in any of those cases upholding the general rule, that the motion for new trial was based only upon the ground of insufficiency of evidence.

It would be absurd, illogical and unjust to interpret section 657, which the cases hold was intended primarily to place a limit upon the time when the trial court could file an order nunc pro tunc, as meaning that where a motion for a new trial is based upon only one ground and that ground is the only one upon which the court could have acted, the order granting the motion is void.

Under the circumstances here, the order considered with the motion sufficiently shows that it was granted on the ground of insufficiency of the evidence. Therefore, in determining whether the court abused its discretion in granting the new trial on the limited issue of damages alone, it becomes our duty to review the evidence, not only with respect to the issue of damages but also to the issue of liability. (See *Bakurjian* v. *Pugh, supra,* 4 Cal.App.2d 450, 454; *Harper* v. *Superior Air Parts, Inc., supra,* 124 Cal.App.2d 91, 92.)

2. *Abuse of Discretion.*

At the trial there was practically no issue as to the extent and value of the damage. Defendant conceded that 14.22

acres of lettuce were damaged. The undisputed evidence showed the loss to be $397.98 per acre or $5,659.28 for the 14.22 acres. Additionally there was a stipulated cost of $37.50 for surveying shown by plaintiff to be necessitated to mitigate damages. Total damage, $5,696.78. Defendant in its closing brief points out that at the trial it did not cross-examine on the subject of damages, and that there was no dispute of the amount of damages claimed by plaintiff. In view of that fact, defendant contends the verdict was a compromise one on the issues of liability. We see no escape from that conclusion.

The complaint charged defendant with negligently handling and applying fertilizer to plaintiff's land so as to burn and damage 14.22 acres of growing lettuce. For at least six years defendant had supplied the fertilizer needs of plaintiff on its ranch properties and undertook to do so in 1954. The particular portion of the ranch on which defendant in April broadcast cyanimid was designated Ranch 5, Patch 5, where broccoli had been harvested recently. Adjoining it were Patches 6 and 7, planted to lettuce. These were the areas damaged by the cyanimid broadcast on Patch 5. Under the arrangement customarily followed between defendant and plaintiff and other ranchers dealing with defendant, the latter undertook to fertilize the particular rancher's fields in a manner which defendant felt to be for the best interests of the rancher. The customary process of soil preparation for a lettuce crop following the harvesting of a crop such as broccoli in the Salinas Valley area (where plaintiff's ranch is located) was, first, to knock down by a beater the remainer of the old broccoli plants. The field is then disked, turning under the remaining foliage of the broccoli plants. These operations are performed by the rancher. Then defendant makes two applications of fertilizer, the first one, 500 pounds per acre of single sulphur phosphate, and the second 400 pounds per acre of cyanimid. Thereafter the rancher takes over, disks, chisels and lists up the field, shapes the beds and plants the new crop.

Plaintiff prepared the soil for application of the fertilizer. About the 26th of April defendant commenced the broadcast of cyanimid. It took three or four days and was completed about the 30th. Plaintiff's vice president testified that on the 30th it was very windy and he had remarked that he hoped his men had finished plaintiff's job that day on account of the terrific winds. Approximately three or four days thereafter damage was noticed to the lettuce growing at the bound-

ary of Patches 6 and 7 adjacent to Patch 5 where the cyanimid had been broadcast. The damage was heaviest nearest to Patch 5. The equipment used in spreading the cyanimid was a tractor pulling a hopper into which the cyanimid was placed in powdered form and from which it was spread to the soil. The hopper was approximately 120 inches long, 12 to 14 inches wide at the top, 5 to 7 inches wide at the bottom, 12 to 14 inches above the ground, and 30 to 35 inches from the ground to the top of the hopper. The openings in the bottom of the hopper were diamond-shaped holes approximately 1 inch wide at the center. Agitators assisted the powder in going through the hopper and out the holes. There was no cover on the hopper. Two employees of defendant performed the work, applying 400 pounds of cyanimid to the acre. Cyanimid can be obtained in two forms, powdered and granulated. Powdered was approximately $10 cheaper per ton than granulated.

Joseph Shoemaker, Senior Inspector of Economic Poisons and Fertilizers of the California Department of Agriculture, testified that the powdered form of cyanimid is generally used for defoliation while the granular form is used for application through a broadcaster as a fertilizer because the granular material is considered to be dust free. There is a possibility of drift from the dust of the powdered form if it is operating in the wind. He further testified that if cyanimid is broadcast it was the custom for the rancher to follow behind the applicator and disk the material under.

Thompson, plaintiff's ranch superintendent, testified that according to the ranch records and his own knowledge disking started the next day after the spreading started and that they disked up as far as the spreader had gone. They were disking to catch up with the spreader and would stop when they caught up. Disking was only done in the morning and the field was practically all disked at the time he discovered some burning of the lettuce. He then testified that the disking was completed the same day that the cyanimid was broadcast. In his deposition Thompson stated that he could not recall whether or not disking was carried on at the same time the broadcasting was going on, nor how long after the latter was completed disking first started, although he estimated that the disking was done sometime within a week thereafter. He further testified that he discovered damage to the lettuce some three or four days after the broadcasting was completed and that such discovery was three or four days before the disking was done,

but it could have been after the disking. After his attention was called to these statements in his deposition he stated definitely that the disking started the day after the broadcasting started. The diskers would permit defendant's men to get approximately one acre ahead of them. Broadcasting took more time than disking. They would not disk in the afternoon because of wind.

The ranch records show that on April 26 no disking was done; on April 27 chisel work 6½ hours, disking 3½ hours; April 28, chiseling 20 hours; April 29, chiseling 20 hours, disking 5 hours; April 30, listing 10 hours; May 1, bed shaping 16 hours; May 2, none. Starting with May 3, planting commenced.

Plaintiff's tractor foreman testified that they started disking the day after defendant started broadcasting the cyanimid. He stated that they could disk 50 acres in a 12-hour day. They followed right behind the fertilizing equipment. He could not recall if they worked consecutive days, although they followed the fertilizing equipment each day that the latter worked, and there was no time when there was broadcasting that they were not also disking. He then testified that he had no precise recollection of what disking was done that April. He was basing his testimony on the routine usually followed.

Sbrana, one of plaintiff's partners, after testifying that in his opinion the damage to the lettuce was due to cyanimid, testified to talking with Rose. The latter admitted to him that the damage to the lettuce was caused by cyanimid drifting over and stated "that it would be taken care of." At the trial Rose denied making any statement indicating that the damage was due to any fault of defendant. They met later and determined the extent of the damage.

Rose testified that on all plaintiff's ranch that year defendant used about 100 tons of powdered cyanimid, about 420 50-pound bags being used on the area in question here. In the general area of plaintiff's ranch defendant used 300 to 400 tons of it. In referring to the fact that powdered cyanimid was $10 per ton cheaper than granulated, he stated that the policy between plaintiff and defendant was that defendant took care of plaintiff to the best of its ability and "to be as right as possible as we can with them from a cost standpoint."

This is a peculiar case and noted more for what is not proved than what is. Proved is the fact that some three or four days after defendant finished broadcasting cyanimid,

14.22 acres of lettuce in the adjoining fields were burned, and that the burning was caused by cyanimid. There was no proof as to how the broadcasting was actually done other than that it was customary to use a broadcaster of the dimensions hereinbefore set forth and that such a broadcaster was used. There is no proof of negligence other than the fact of injury itself. This is not a res ipsa loquitur case, and the burden of showing defendant's negligence is on plaintiff. There is no evidence as to wind conditions other than Rose's statement that the wind was blowing terribly on April 30 but it is impossible to tell from the evidence as to whether there was any broadcasting that day. A defendant's witness testified that disking was not usually done in the afternoon because of wind. There was evidence that there was no lid on the broadcasting hopper but no evidence as to whether that fact was important. The Department of Agriculture inspector testified that powdered cyanimid was customarily used for defoliation and granular for fertilization, but his experience was mainly in use of cyanimid as an insecticide. Against his testimony was that of defendant's vice president to the effect that powdered cyanimid was used that year to a large extent in the area. There was testimony as to the use of cyanimid in previous years but unfortunately whether it was the powdered or the granular form was not stated.

The admission of fault was denied. The evidence established that disking must necessarily follow the broadcasting rather closely. The evidence on whether or not it did is delightfully uncertain. The oral testimony on the subject is not too clear and is based mainly upon general routine rather than actual recollection of the witnesses. Plaintiff's records indicate that the disking did not follow very closely. The records show that between April 26 and April 30, the time when apparently the broadcasting was done, although there was a statement by defendant's vice president that it could have started earlier, the only disking was 3½ hours on the 27th and 5 hours on the 29th. However, although the evidence shows that disking customarily followed broadcasting there is no evidence as to the effect of failure to disk immediately.

The jury retired at 2:25 and returned to the courtroom at 2:43 for the rereading of the court's instructions on their preliminary duties, that is, that they should first determine if defendant was negligent, then if plaintiff was negligent or assumed the risk. At 4:18 the jury returned with an 11 to 1 verdict.

■ The evidence here would support a verdict in favor of plaintiff or one in favor of defendant. The fact that, in view of the uncertainty of the evidence the jury disregarded the conceded amount of damage as to which there was no contradiction or issue, can only be explained on the ground that the jury did not agree on the issues of liability or alleged defenses, and that the verdict was a compromise one. Under the evidence plaintiff was either entitled to a verdict of $5,696.78 or nothing. Because of that situation the trial court abused its discretion in granting a new trial on damages alone.

■ As we said in *Bencich* v. *Market Street Ry. Co.*, 20 Cal. App.2d 518, 529 [67 P.2d 398], "A limited new trial should not be granted, where substantial justice requires that a new trial, if granted at all, should cover all the issues." (See also *Donnatin* v. *Union Hardware & Metal Co.*, 38 Cal.App. 8, 12 [175 P. 26, 177 P. 845].) It cannot be said as a matter of law that defendant was guilty of negligence or that plaintiff was not guilty of contributory negligence or did not assume the risk. Applicable here is the quotation in the Bencich case, page 529, from the Donnatin case: " 'that in order to reach an agreement, the verdict was the result of unwarranted concessions of convictions made by each of two opposing factions of the jury, one of which conscientiously believed that defendant should prevail in the action and the other equally conscientious in the opinion that plaintiff should recover damages commensurate with the injuries sustained. It is apparent, we think, that those jurors entertaining the opinion that defendant was not guilty of the negligence charged' (or, in our case, the additional issue that plaintiff was guilty of contributory negligence), 'nevertheless agreed to surrender their views in consideration of other jurors consenting to the trifling award made. . . . It would work a grave injustice upon defendant to force it to a new trial of the issue as to damages only, with the issue as to liability, upon which no verdict other than in name had been rendered, forever closed against inquiry.' "

Had there been an agreement among the jurors on defendant's liability and the defenses raised by defendant it is obvious that the verdict was completely unjust to plaintiff in the matter of damages. The conclusion is inevitable that the jurors compromised the amount of damages in order to get a verdict on the other questions in the case. Even though the trial court believed, as it evidently did, that the evidence justified a verdict in favor of plaintiff on all matters except

the amount of damages, defendant is entitled to have a jury properly and fairly determine the questions in the case before the court may exercise its judgment on those questions. Here, undoubtedly, the jury did not so act.

Plaintiff suggests that a possible explanation of the amount awarded by the jury is this: An accounting card introduced in evidence showed that the cost of harvesting and packing the lettuce which was used from the damaged portion of the lettuce field was $611.85. This sum added to the stipulated surveying cost of $37.50 equals $649.35, the amount of the verdict. In view of the very precise instructions given on the measure of damages and the difficulty of determining on what theory the jury could have arrived at the measure of damages it apparently applied, it cannot be said that this is evidence that the jury fully agreed upon the issue of liability. A theory more consistent with the facts is that the jury in compromising the verdict decided to award what might be called out-of-pocket expenses paid on the damaged portion of the crop. Applicable here is the following from *Bencich* v. *Market Street Ry. Co., supra,* 20 Cal.App.2d 518, 529-530: "In view of this uncertainty and the fact that clearly something other than the evidence on the question of damages must have actuated the jury, or some of them in arriving at such a low verdict, substantial justice requires that (as said in the Donnatin case, *supra,* p. 11), '. . . what is a just compensation the plaintiff should receive, if he is entitled to recover at all, can best be determined by trying the whole case before one judge and one jury instead of "splitting it up" between different judges and different juries.' "

The order appealed from is reversed with directions to the trial court to grant plaintiff's motion for new trial without limitation and to retry the case on all issues.*

Peters, P. J., and Wood (Fred B.), J., concurred.

---

*Plaintiff moved for a new trial on the issue of damages alone, or, in the alternative, on all issues.