**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Plaintiff-Appellee,**

v.

**GREAT LAKES WAREHOUSE CORPORATION, Defendant-Appellant.**

**No. 12371.**

United States Court of Appeals
Seventh Circuit.

Nov. 21, 1958.

———◆———

Carl Pomerance, Chicago, Ill., Henry R. Sackett, Gary, Ind., for appellant.

Owen W. Crumpacker, Lowell E. Enslen, Hammond, Ind., Paul H. Heineke, Arthur J. Baer, Jr., Heineke, Conklin &

Schrader, Chicago, Ill., Crumpacker, Gemberling & Enslen, Hammond, Ind., of counsel, for appellee.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

HASTINGS, Circuit Judge.

This was a diversity action brought to recover damages for 480 cases of Kool-Aid, a soft drink concentrate, stored by plaintiff's insured with defendant, a public warehouseman, and damaged by a fire which occurred in defendant's warehouse. The complaint was in two counts, the first grounded on negligence and the second on the failure of defendant, as a warehouseman to return the goods on demand. The first count was dismissed at the close of plaintiff's case in chief and no error was assigned on this ruling. There was a trial by jury resulting in a verdict for plaintiff in the amount of $3,252.49 on which judgment was rendered, and from which this appeal is taken.

The errors relied upon arise out of rulings on evidence, instructions and the failure of the trial court to grant defendant's motion for a new trial on the ground that the jury improperly returned a compromise verdict and that there was no competent evidence to support a verdict for plaintiff. In view of the disposition we make of this case we need only consider the primary contested issue: Whether the verdict was improper as a compromise by the jury of the issues of liability and damage?

Great Lakes Warehouse Corporation, defendant (appellant), operated a general storage warehouse at Hammond, Indiana, as a public warehouseman. Prior to May 5, 1955, defendant had issued its warehouse receipts to the Milwaukee Cheese Company for 480 cases of Kool-Aid stored in its warehouse and owned by the latter. While the Kool-Aid was in defendant's warehouse it was damaged by fire on May 5, 1955.

Following the fire, the Milwaukee Cheese Company submitted a proof of loss to its insurance carrier, National Fire Insurance Company of Hartford, plaintiff (appellee), for $8,805.89, the value of the 480 cases of Kool-Aid. Plaintiff paid the full amount of the loss claimed and received $2,299.92 in salvage from the sale of damaged Kool-Aid, making its net loss $6,505.97. The amount paid by plaintiff to its insured and the amount plaintiff received in salvage are undisputed.

The amount of the verdict, $3,252.49, is, thus, for all practical purposes, one-half of the claimed net loss of plaintiff. No evidence was offered by defendant with reference to the value of the Kool-Aid or the amount of salvage recovered by plaintiff.

The record discloses the following oral stipulation entered into by the parties at the trial:

"* * * the property of the Milwaukee Cheese Company, to-wit, the 480 cases of Kool-Aid, was destroyed by fire on May 5, 1955, except for the salvage thereof."

Defendant refused to stipulate the number of cases of Kool-Aid that were damaged by the fire or the amount of the salvage. Plaintiff proved by its claims supervisor, Jepsen, and with its canceled draft that it paid its insured the sum of $8,805.89 on account of the fire loss, and that the salvage (the damaged cases of Kool-Aid) was turned over to Underwriters Salvage Company, a bonded salvage company, for sale. Jepsen also testified that a gross amount of $2,620.80 was realized from the sale of the salvage of which amount plaintiff received a net sum of $2,299.92, after deducting the cost of such sale. Plaintiff also established through a disinterested expert witness that on the day of the fire the Kool-Aid had a fair market value of $18.72 per case.

While plaintiff admits that "the record clearly shows that * * * defendant did not present evidence directly contradicting plaintiff's proof of damages", it contends that by its refusal to stipulate as to this issue and by its cross-examination of plaintiff's witness, Jepsen, that defendant thereby introduced "evi-

dence from which the jury could draw a contrary inference." We know of no authority that a refusal to stipulate the extent of damage has the effect of contradictory evidence. It does nothing more than to put the other party on proof of the facts sought to be stipulated, and no inference can or should be drawn by a jury from such refusal.

We have examined in detail the record showing defendant's cross-examination of Jepsen, plaintiff's claim supervisor, regarding the value of the salvage. The most that it shows is that there were 275 cases of Kool-Aid stored on the fifth floor of the warehouse which was entirely consumed by the fire; that the remainder (shown by our computation to have been 205 cases) was on the fourth floor which was damaged only by smoke and water; that Jepsen did not know who bought the salvage, when it was sold, the number of cases sold as salvage or the unit price it brought; and that plaintiff accepted without question the figures submitted by the salvage company. Defendant did not bring out anything to dispute or cast doubt upon the amount plaintiff actually did receive from the salvage or that plaintiff could or should have done anything different to further minimize its loss. We do not agree with plaintiff that there was any evidence introduced from which the jury (if it found liability on part of defendant) could have drawn any reasonable inference that plaintiff's loss was any amount other than its claim loss payment of $8,805.89, less its salvage recovery of $2,299.92, leaving a recoverable balance of $6,505.97.

In this connection we deem it pertinent to examine the court's single instruction to the jury on the measure of damages, as follows:

"If you reach the question of damages—and by this instruction I am not implying that the plaintiff should or should not recover; that is a matter that is entirely for you to decide, under the facts and the law— if you find for the plaintiff, it will be your duty to assess its damages, if any. In fixing an amount of damages, the measure of damages is the fair cash market value of the Kool-Aid immediately before the fire *less the fair cash market value of any part of the Kool-Aid that was salvaged after the fire.*

"You must try this case, ladies and gentleman, *on the evidence* that you have heard here in the courtroom. You are not to go outside of the evidence and conjecture; *you are not to guess or speculate.*" (Emphasis added.)

We can come to no other conclusion but that the jury disregarded this instruction.

Further, it was represented to us in plaintiff's brief and in oral argument, and not denied, that, in their argument to the jury, plaintiff's counsel demonstrated on a blackboard the computation of $8,805.89–$2,299.92=$6,505.97 as the amount of its proper recovery. A verdict of $3,252.49, one-half of this amount, cannot be said to be a mere coincidence.

While we do not reach the question of the sufficiency of the evidence to support the verdict, the issue of liability was the principal subject of controversy, was vigorously contested and, in our opinion, was an extremely close question. This makes necessary more careful scrutiny of the jury's verdict than otherwise might be the case.

There are two lines of decisions involving improper or compromise jury verdicts. In one line involving unliquidated damages, usually recoveries for personal injuries in negligence cases, verdicts were not allowed to stand where the courts found them so grossly inadequate as to compel the conclusion that they represented a compromise by the jury on the question of liability and damage. See Schuerholz v. Roach, 4 Cir., 1932, 58 F.2d 32; Pugh v. Bluff City Excursion Co., 6 Cir., 1910, 177 F. 399; Davison v. Monessen Southwestern Ry. Co., D.C. W.D.Pa.1956, 144 F.Supp. 599; Malmskold v. Libby, McNeil & Libby, D.C. W.D.Wash.1940, 31 F.Supp. 958; Bass v. Dehner, D.C.D.N.M.1937, 21 F.Supp. 567.

In a second category are holdings in which the damages sought were liquidated or not contested by the defendant. In Selamakos v. Victory Ice & Ice Cream Co., 1927, 246 Ill.App. 178, an action in assumpsit for services, the jury returned a verdict for one-half of plaintiff's claims where recovery turned solely upon proof of the contract on which plaintiff relied. On appeal, the court held that the verdict should have been either for the full amount of the claim or otherwise for the defendant. The court summed it up thus: "It is a remarkable coincidence that the verdict of the jury is just half of the amount of the claim * * *. Such action shows * * * a lack of due consideration of the evidence by the jury, and that their verdict was instigated by a spirit of compromise * * *." Id. at page 183.

In Alden v. Sacramento Suburban Fruit Lands Co., 1917, 137 Minn. 161, 163 N.W. 133, plaintiff sought recovery of a real estate commission of $1,250, exactly 10% of the selling price as fixed by contract. The jury returned a verdict for $600. The trial court had charged the jury that if plaintiff was entitled to any recovery it would have to be the contract rate of compensation. In setting aside the verdict on appeal, the Supreme Court of Minnesota declared: "The damages were not unliquidated. They were entirely certain. The jury did not make a mistake. They were not under a misapprehension. They disregarded the evidence and the issues and the trial court's charge. That they compromised does not admit of question. * * * The jury compromised * * * between the right of recovery and its amount." Id., 163 N.W. at page 134.

Ice-Kist Packing Company v. J. F. Sloan Co., 1958, 157 Cal.App.2d 695, 321 P.2d 840, was an action for damage to crops from negligent application of fertilizer. The undisputed evidence showed damages of $5,696.78, yet the jury returned a verdict in the sum of $649.35, representing the exact amount of certain out of pocket expense incurred by plaintiff. The trial court granted a new trial limited to the issue of damages. On appeal, the District Court of Appeals in California reversed and remanded for a new trial on all the issues holding such a verdict to be a compromise on the issue of liability as well as on the issue of damages, and pointing out that at the trial "there was practically no issue as to the extent and value of the damage." Id., 321 P.2d at page 843.

██ In the instant case, if there was liability on the part of defendant, plaintiff was entitled to recover the amount of insurance it paid to its insured after giving credit for "the fair cash market value of any part of the Kool-Aid that was salvaged after the fire." By its verdict the jury found that plaintiff was entitled to recover, yet it awarded only one-half of the amount of its loss as established by the undisputed evidence on this subject and under the court's instructions. It is absurd to say this is anything other than a compromise verdict and highly improper as a compromise, not only as to damages, but on the issue of liability. In many cases of unliquidated damages it is quite proper for a jury to compromise the differences of the parties where amount of the verdict is not so grossly inadequate as to render it a farce. Commendable as such practice may be, however, a jury cannot compromise an issue of liability.

Upon consideration of the entire record we conclude that the jury's verdict is inconsistent with the evidence, that it is violative of the court's instruction regarding the measure of damages, that it is an improper compromise of both the issues of liability and damages and, as such, unfair to both parties. Such a compromise verdict taints the entire proceeding and a new trial should have been ordered upon all the issues.

We hold that the trial court erred in denying defendant's motion for a new trial. The judgment of the district court is reversed and the case is remanded for a new trial upon all the issues.